UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PALMISANO, LLC f/k/a PALMISANO CONTRACTORS, LLC | * | CIVIL ACTION NO. 19-cv-12755 |
| | * | SECTION "H" (3) |
| VERSUS | | |
| | * | JUDGE JANE TRICHE MILAZZO |
| NORTH AMERICAN CAPACITY INSURANCE COMPANY | * | MAGISTRATE DANA DOUGLAS |

**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO LIMIT THE TESTIMONY OF JOHN ENDOM AND RANDALL MCCAFFREY**

**MAY IT PLEASE THE COURT:**

Plaintiff, Palmisano, LLC f/k/a Palmisano Contractors, LLC ("Palmisano") respectfully submits this Memorandum in Support of its Motion in Limine to limit the testimony of John Endom and Randall McCaffrey for the following reasons.

**I.    INTRODUCTION AND FACTUAL BACKGROUND**

This suit arises from Palmisano's claim as an additional named insured of North American for covered losses under a builder's risk policy. Palmisano acted as the general contractor on the Project at the center of this dispute. Sizeler Thompson Brown was the architect for the Project and Schrenk, Endom & Flanagan Consulting Engineers, acted as the structural engineers. The Owner, Kenner Discovery, selected Southern Earth Sciences to act as their third-party inspector to oversee the Project on their behalf and ensure that the work was progressing as required by the plans and specifications.

Specifically, it was Southern Earth's responsibility to "[v]isually inspect each steel shell immediately prior to filling with concrete to verify a clean, water free shell and [s]ubmit reports to Owner, Architect, Engineer, and Contractor. Driving records shall be submitted daily to the

engineer." Palmisano retained Crescent Foundations, LLC, to drive composite shell/timber foundation piles for the Project. Representatives from Southern Earth, Crescent, and Palmisano were on site for all pile driving activity. However, representatives of Sizeler Thompson Brown and Schrenk, Endom & Flanagan were not.

### A. THE PILE DRIVING PROCESS

To summarize the pile driving process, Palmisano adopts Crescent's description set forth in R. Doc. 102-1 as follows:

> The composite can piles are designed as two separate portions. The bottom portion is a 70-foot-long timber pile that is commonly used for all types of structures. The top portion is a seventeen-foot corrugated steel can ultimately filled with concrete.
>
> The composite piles are created by first driving the 70-foot timber pile into the ground leaving only the top couple of feet exposed. At this point, the top of the pile is cutoff to ensure a flat surface to seat the bottom of the corrugated can onto the top of the pile. The steel can is then placed on top of the wooden pile, and using a mandrel, the corrugated can and wooden pile are driven together further into the ground until approximately 2-3 feet of the can remains exposed.
>
> Next, Crescent would pump any water, silt, or debris from the bottom of the can. Southern Earth Sciences would then inspect the inside of the can and authorize Crescent to pour concrete into the can. Only then would Crescent pour concrete into the can filing it to the top. A piece of rebar is then placed into the concrete in the steel shell to consolidate the concrete.

The first pour occurred on December 11, 2018, and the second pour occurred on December 14, 2018.[1] The third pour began on January 3, 2019.[2] During each pour, approximately 200 piles were filled with concrete.[3] Pours 1-3 resulted in 618 piles being filled.

---

[1] Exhibit 1 - Palmisano 30(b)(6) Deposition at 44:20-24.
[2] *Id.*
[3] Exhibit 1 - Palmisano 30(b)(6) Deposition at 46:13-17.

**B.  IT IS UNDISPUTED BASED ON THE TESTIMONY FROM THOSE WHO ACTUALLY WITNESSED THE POURS, THAT PALMISANO PERFORMED ITS WORK IN COMPLIANCE WITH THE PLANS AND SPECIFICATIONS FOR 581 PILES IN POURS 1, 2, AND 3**

As it relates to Pours 1 and 2, Southern Earth Sciences testified there were no issues with these Pours. However, on January 3, 2019, during Pour 3, it came to the Project team's attention that unanticipated, excessive ground water conditions apparently were present, as evidenced by water seen at the top of 37 of the steel cans, after concrete was poured. As required by its contract, Southern Earth Sciences issued a notice regarding the 37 piles and testified that **only the 37 piles** that were noted to have water were "noncompliant."[4]  Specifically, Southern Earth Sciences testified:

> Q. Mr. Meyn, earlier, you were asked in your personal deposition whether you were aware of any problems with the pile driving or placement of concrete in composite piles prior to January 3, 2018 -- or 2019. I'm sorry. Is that also your answer speaking on behalf of the company, on behalf of Southern Earth Sciences, that the company was not aware of any problems with the pile driving or placement of concrete in the composite piles before that date?
> A. No, that's correct, we did not know of any problems in Pours 1 and 2.[5]
>
> \*   \*   \*
>
> Q. What about the engineer of record, were you ever in a position where you were aware of noncompliant -- or composite piles that were not installed in compliance with the plans and specifications but which you did not advise or report it to the engineer of record?
> A. Only in Pour 3, and they were all advised.[6]

---

[4] Please note, it is disputed whether the 37 piles were actually noncompliant.
[5] Exhibit 2 - Southern Earth Sciences 30(b)(6) Deposition at 50:14-24.
[6] Exhibit 2 - Southern Earth Sciences 30(b)(6) Deposition at 63:12-18.

3

Additionally, Kenny Meyn, Southern Earth Sciences Corporate Representative and general representative who was involved since the beginning of the Project, personally testified as follows as it relates to Palmisano's compliance with the plans and specifications for the 581 piles in Pours 1, 2, and 3:[7]

> Q. And if Southern Earth Sciences believed that something was being done by Crescent and/or Palmisano that was contrary to the plans and specifications, would Southern Earth Sciences have prepared a deviation report?
>
> ALL OTHER COUNSEL:
>     Objection to form.
>
> A. We would have, and we did when it got to Pour 3.
>
> \*   \*   \*
>
> Q. Now, counsel asked you about January 3 as being the date when a problem surfaced; do you recall that?
> A. Yes.
> Q. Prior to January 3, are you aware of any problems with the driving of the piles?
> A. No.
> Q. Prior to January 3, are you aware of any problems with the placement of concrete in the composite pile?
> A. I was not personally aware, no.
>
> \*   \*   \*
>
> Q. And during the pours of the cans in the first pour, did Southern Earth Sciences visually inspect the steel shell immediately prior to filling the concrete to verify a clean, water-free shell?
> A. Yes, in the manner that I had described earlier.
> Q. And did Southern Earth Sciences, in Pour 1, note any deficiencies or any problems in the manner in which the concrete was placed for Pour 1?
> A. No.
> Q. Is it Southern Earth Sciences' opinion that the concrete placed in Pour 1 was in compliance with the plans and specifications?
> A. Yes, at that time, it was.

---

[7] Exhibit 3 - Meyn Deposition at 86:11-20, 87:3-16, 87:22-88:9, 109:16-24.

4

\* \* \*

> Q. Okay. And with respect to Pour 2, did Southern Earth Sciences inspect the steel shell to verify a clean, water-free shell?
> A. We did in the manner that I've previously described, yes.
> Q. Is it Southern Earth Sciences' opinion that the manner in which the concrete was placed for Pour 2, that that complied with the plans and specifications?
> A. As far as we know, at that time, yes.
> Q. With respect to Pours 1 or 2, did Southern Earth Sciences prepare or issue any type of deficiency report?
> A. Not that I know of.

Palmisano confirmed that the only "noncompliance" report issued by Southern Earth Sciences was limited to the 37 piles:[8]

> Q. Okay. So for the other -- For the remainder of the pile cans from Pours 1, 2, and 3, apart from those 37, there was no water observed on top of the can is what you're telling me?
> A. Not per Southern Earth's reports.

And Crescent also testified that the process described by Palmisano and used for pours 1-3 was consistent with the same process followed for tens of thousands of composite pile installations.[9]

### C. JOHN ENDOM AND RANDALL MCCAFFREY DID NOT WITNESS THE POURS

John Endom is an engineer with Schrenk, Endom & Flanagan Consulting Engineers, which was subcontracted by the Architect for the Project, Sizeler Thompson Brown Architects, to serve as the structural engineers of record on the Project. As part of his duties as an engineer on the Project, Mr. Endom received information from Southern Earth Sciences regarding the water infiltration discovered on the Project on January 3, 2019. However, Mr. Endom did not personally observe any of three concrete pours which are at issue in this matter. As a result, any opinion he

---

[8] Exhibit 1 - Palmisano 30(b)(6) Deposition at 64:19-23.
[9] Exhibit 4 – Crescent Foundations 30(b)(6) Deposition at 93:7-94:15.

5

may attempt to offer based upon facts which he did not personally observe should be limited by the Court.

Further, Randall McCaffrey is a construction administrator for Sizeler Thompson Brown Architects, who was the architect on the Project. As part of his duties as construction administrator for the architect, Mr. McCaffrey monitored the progress of the work "for general compliance with the requirements for the construction documents" and served as a "point of contact for communication between the owner, the engineers, [and] the contractor".[10] Importantly, however, Mr. McCaffrey was not a witness to any of the concrete pours which are at issue in this matter. As a result, like Mr. Endom, any opinion he may attempt to offer based upon facts which he did not personally observe should be limited by the Court.

## II.  LAW AND ARGUMENT

Rule 602 of the Federal Rules of Evidence requires that a witness may testify "only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."[11] Opinion testimony offered by lay witnesses is further governed by Rule 701 of the Federal Rules of Evidence, which provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.[12]

---

[10] Exhibit 5 - McCaffrey Deposition at 17:6-18.
[11] *See* Fed. R. Evid. 602.
[12] *See* Fed. R. Evid. 701.

Implicit with this rule is the requirement that the witness have personal knowledge of the events or facts to which he is testifying to. According to Rule 602, a "witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."[13] The Advisory Committee notes to Rule 602 explain that the rule "require[es] that a witness who testifies to a fact which can be perceived by the senses must have had an opportunity to observe and must have actually observed the fact."[14] "Rule 602 is considered in conjunction with Rule 701, which limits opinions of non-experts to opinions rationally based on the perceptions of the witness.

The law is well settled that "[a] lay witness may offer opinion testimony, so long as the opinion is 'not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.'"[15] "In adopting the 2000 amendment, the Advisory Committee stated that 'the distinction between lay and expert testimony is that lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.'"[16] As noted by the Fifth Circuit Court of Appeals, "[n]umerous courts, including this one, have adopted this distinction."[17]

### A. JOHN ENDOM'S TESTIMONY MUST BE LIMITED TO HIS PERSONAL KNOWLEDGE ACCORDING TO FED. R. OF EVID. 701 AND 602

Mr. Endom was not present for concrete Pours 1, 2, or 3. Consequently, he does not have any personal knowledge of any of those pours, which represent all of the piles which were

---

[13] *See* Fed. R. Evid. 602.
[14] *See* Notes of Advisory Committee on Proposed Rules 602 (quoting C. McCormick, Handbook of the Law of Evidence § 10, at 19 (1954)).
[15] *Pendarvis v. Am. Bankers Ins. Co. of Fl.*, 354 Fed. Appx. 866, 869 (5th Cir.2009) (citing Fed.R.Evid. 701(c)).
[16] *Pendarvis*, 354 Fed. Appx. At 868 (citing Notes of Advisory Committee on 2000 amendments (quoting *State v. Brown*, 836 S.W.2d 530, 549 (Tenn.1992)).
[17] *Pendarvis*, 354 Fed. Appx. at 868 (citing *U.S. v. Caldwell*, 586 F.3d 338, 347–48 (5th Cir. 2009); *U.S. v. Sosa*, 513 F.3d 194, 200 (5th Cir. 2008); *U.S. v. White*, 492 F.3d 380, 403 (6th Cir. 2007); *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1124 (10th Cir. 2005); *U.S. v. Garcia*, 413 F.3d 201, 215–16 (2d Cir. 2005)).

eventually rejected as a result of the unprecedented volume of water which was first observed on Pour 3.  Any opinion that Mr. Endom might offer, then, that there was water in the cans before the placement of concrete is not based on any personal knowledge of that fact, and Mr. Endom should not be permitted to offer such an opinion at trial.

Mr. Endom did not personally observe Pour 1, which occurred on December 11, 2018:

> Q. **As it relates to the concrete pour and the composite piles on 12-11, did you personally view that concrete being poured on 12-11-18?**
> A. **No.**[18]
>
> …
>
> Q. Is it fair to say that sitting here today, you did not witness on 12-11-18 any cans that were poured with water in them?
> A. I did not.[19]

Not only did Mr. Endom not personally observe Pour 1, he also did not receive any visual documentation of Pour 1:

> Q. Did anybody during the course of this project provide you with any photographs or videos or deficiency reports that stated that the pours that occurred on 12-11-2018 where Crescent or Palmisano poured concrete in a can with water in it?
> A. We did not receive any reports, no. Or videos, no.[20]

Likewise, Mr. Endom did not personally observe Pour 2, which occurred on December 14, 2018:

> Q. **As it relates to pour 2 that occurred on December 14th, 2018, did you personally view any of the concrete being poured into the composite piles on that day?**
> A. **No.**[21]

---

[18] Exhibit 6 - Endom Deposition at 95:12-15.
[19] Exhibit 6 - Endom Deposition at 95:20-23.
[20] Exhibit 6 - Endom Deposition at 96:17-23.
[21] Exhibit 6 - Endom Deposition at 97:4-8.

Mr. Endom confirmed multiple times in his deposition that he did not personally observe the concrete pours on Pour 1, 2, or 3:

> Q. So when you testified earlier that concrete for pours 1, 2 and 3 was placed in cans with water in that, that is not based on anything that you saw with your own eyes. Is that correct?
> A. At the time of placement?
> Q. Yeah. At the time of placement. Correct.
> A. No. It is not based on my visual observations at the time of placement.[22]
>
> …
>
> Q. **Mr. Endom, you testified earlier that you didn't witness any of the concrete pours for any of the composite piles on 1, 2 and 3. Is that correct?**
> A. **Yes.**
> Q. And so when the testing reveals after, that testing later reveals that piles are damaged. Is that correct?
> A. Yeah. It was the extractions and observations of the extractions, and then also the pile load tests. Yes.
> Q. And some of that damage occurs to the concrete right above where there is a splice. Is that correct?
> A. Yeah. Because of water.
> Q. And so it is fair to say that you don't have any personal knowledge as to when that water got in the can, be it before the concrete was placed or after the concrete was placed? You didn't see it.
> A. **I did not personally see it.**[23]

Mr. Endom did not personally observe the cans being poured, and therefore cannot offer testimony in the form of an opinion as to the cause of the damage to the piles which was discovered after Pour 3.

### B. MR. ENDOM IS NOT OFFERED AS AN EXPERT WITNESS, AND THEREFORE CANNOT TESTIFY AS TO AN HIS OPINION WITHOUT PERSONAL KNOWLEDGE

As a lay witness, any testimony, opinion or otherwise, is strictly limited by Mr. Endom's personal knowledge. As clearly established by his testimony, Mr. Endom simply does not have

---

[22] Exhibit 6 - Endom Deposition at 103:13-24.
[23] Exhibit 6 - Endom Deposition at 131:21-132:23.

9

personal, firsthand knowledge of the concrete pours at issue in this case.  Mr. Endom did not personally witness any of the concrete pours.

For Mr. Endom to offer testimony in the form of an opinion, he must have been designed as an expert witness on the Pre-Trial Order, which he has not.  As a result, Mr. Endom cannot offer opinion testimony which is based upon facts which he did not personally observe, as that is only permissible under Fed. R. of Evid. 703.[24]  Here, Mr. Endom is strictly limited by Fed. R. of Evid. 701 to offering opinion testimony based upon what he personally perceived.

The distinction between Mr. Endom offering testimony regarding his actions and what his opinion based is actual observations may be narrow, but it is crucial:  Mr. Endom's testimony as to what he did when investigating the piles or a decision he made about them must be distinguished from any opinion he might offer regarding the cause of the damage to the piles.  He cannot know whether water was in the cans prior to any concrete pours, because by his own testimony, he did not personally observe any of the concrete pours on Pour 1, Pour 2, or Pour 3, which are the only pours at issue here.

### C. RANDALL MCCAFFREY'S TESTIMONY MUST BE LIMITED TO FACTS AND OPINIONS WHICH ARE RATIONALLY BASED UPON HIS PERCEPTION

In this case, Mr. McCaffrey testified very clearly that he did not witness any of the concrete pours on Pours 1, 2, or 3, which were the Pours which represent the piles eventually rejected by Schrenk, Endom, and Flanagan.  As a result, Mr. McCaffrey's is not qualified to offer testimony regarding any of these Pours.  As he clearly stated in his deposition:

> Q.  **Do you have any recollection as to being on site for Pour 3 on January 3, 2019?**
> A.  **No, I was not**.

---

[24] Fed. R. Evid. 703 permits experts to "base an opinion on facts or data in the case that that the expert has been made aware of".

10

> Q. And so, because you were not on site, you did not personally witness or observe the manner in which the concrete was placed into the composite can on January 3, 2019; is that correct?
> A. That is correct. I actually was on site that afternoon. We had a progress meeting, and there was no activity on the site at that time, but I did not witness any pouring in the cans earlier in the day.[25]
> Q. **So, as it relates to Pour 1, Pour 2, and Pour 3, you did not personally witness any of the placement of concrete into the composite cans; is that correct?**
> A. **That is correct.**

Mr. McCaffery does not have personal knowledge sufficient to permit to him to testify as to either the circumstances of any of the Pours, nor to offer any opinion as to the reasons for the failure of the piles which were eventually rejected. He simply has no personal knowledge of the installation of the piles on the Project, as required by Rule 602.

Mr. McCaffrey did not personally observe the cans being poured, and therefore cannot offer testimony in the form of an opinion as to the cause of the damage to the piles which was discovered after Pour 3. A straightforward application of the facts to the rules of evidence and the caselaw clearly establishes that Mr. McCaffrey should not be permitted to testify in the form of an opinion about the cause of the water infiltration into the composite cans, because he simply did not ever witness the concrete pours at issue in this case. As a result, the Court should limit his testimony.

### III. CONCLUSION

Mr. Endom and Mr. McCaffrey's testimony should be limited to that which they personally observed. Therefore, this Court should prohibit Mr. Endom from testifying as to the cause of the damage to the piles or when the water was present in the cans, because he did not personally witness the pouring of concrete on Pours 1, 2, or 3, which represent the concrete pours for all of

---

[25] Exhibit 5 - McCaffrey Deposition at 75:4-18.

the rejected piles. Mr. Endom is not offered as an expert, and therefore cannot offer opinion testimony based upon evidence which was made known to him; he is limited as a lay witness to that which he personally perceived. Further, Mr. McCaffrey's testimony should be limited to that which he personally observed and should be prohibited from testifying as to the cause of the damage and water infiltration into the piles, because he did not personally witness the pouring of concrete on Pours 1, 2, or 3.

Therefore, Palmisano respectfully moves this Honorable Court to limit Mr. Endom's and Mr. McCaffrey's testimony to that which they personally observed and prohibit them from offering testimony in the form of an opinion regarding the cause of the damage to the piles at issue or whether there was water in the cans before or after the concrete was placed.

Respectfully submitted:

**RIESS LEMIEUX, LLC**

By:  */s/ Christopher K. LeMieux*
Christopher K. LeMieux (#27838)
Johanna Elizabeth Lambert (#33227)
1100 Poydras Street, Ste. 1100
New Orleans, Louisiana 70163
Telephone: (504) 581-3300
Facsimile: (504) 581-3310
E-mail: CLeMieux@RLLaw.com
Email: JLambert@RLLaw.com
***Attorneys for Palmisano, LLC***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the above and foregoing has been served upon all counsel of record by depositing same in the U.S. mail, properly addressed and postage prepaid, and/or by electronic mail, this 12th day of January 2021.

 /s/ Christopher K. LeMieux
CHRISTOPHER K. LeMIEUX