UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PALMISANO, LLC f/k/a PALMISANO CONTRACTORS, LLC | * | CIVIL ACTION NO. 19-cv-12755 |
| | * | SECTION "H" (3) |
| VERSUS | | |
| | * | JUDGE JANE TRICHE MILAZZO |
| NORTH AMERICAN CAPACITY INSURANCE COMPANY | * | MAGISTRATE DANA DOUGLAS |

**REPLY TO NORTH AMERICAN'S OPPOSITION MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF WARREN DIETZ OF RIMKUS CONSULTING, INC.**

MAY IT PLEASE THE COURT:

Plaintiff, Palmisano, LLC f/k/a Palmisano Contractors, LLC ("Palmisano") respectfully submits this Reply Memorandum to North American's Opposition to its Motion in Limine to exclude the report and opinions of Warren Dietz of Rimkus Consulting, Inc.

**I. INVESTIGATING 37 PILES IS NOT "BASICALLY" THE SAME AS INVESTIGATING THE ENTIRE CLAIM.**

According to North American, the 37 piles are "basically" the same as the 581 piles that were not investigated. However, for the 581 piles, it is undisputed that Palmisano's work was in compliance with the plans and specifications and that no deficiency reports were issued. For the 37 piles, initially there was a question regarding Palmisano's work. However, after an investigation, the facts in this matter have shown that it was *not* Palmisano's work that caused the water to be seen on top of the cans, but an unforeseen condition. Nevertheless, North American's 11th hour position is that Palmisano's work was somehow deficient. Thus, for North American, there is a clear distinction between the 581 piles and the 37 piles that form the basis of the Rimkus Report.

Further, it is undisputed and acknowledged by Rimkus and North American that the Rimkus Report authored by Dietz is limited to 37 piles. And as fully set forth in Palmisano's Memorandum in Support of its Motion, the Rimkus Report regarding the 37 piles are merely conclusions lacking factual and scientific foundation. Dietz' conclusions are nothing more than maybes; indeed, Dietz offers conclusions which he asserts "*could* have contributed to the damage to the concrete portion of the composite piles at the construction site" without any analysis or regard for the facts or information that did not support his hypothesis.

Considering the differences between the 581 piles where it is undisputed the work was in compliance with the plans and specifications and the 37 piles that North American allege were improperly installed, and the fact that the Rimkus Report is not reliable and based on conjecture, North American cannot stretch the Report to the remaining 581 piles – there is "simply too great an analytical gap between the data and the opinion offered."[1] As such, any testimony regarding the 581 piles by Mr. Dietz should be excluded as beyond the scope of the Rimkus Report and the "*ipse dixit* of the expert."[2]

## II. DIETZ TESTIFIED THAT A GEOTECHNICAL ENGINEER WAS NEEDED TO DETERMINE A KEY ISSUE IN THE MATTER; THUS, HE DOES NOT HAVE THE SPECIALIZED EDUCATION OR QUALIFICATIONS TO RENDER A REPORT REGARDING CAUSATION.

Although pile driving is not "rocket science," the installation of composite pilings for large commercial buildings are certainly different than an average pile driving project. And simply because one is an engineer does not mean they are qualified to render an opinion without specialized training or experience, much like a lawyer is not necessarily qualified to handle just any matter without the requisite training or experience. Mr. Dietz' resume is devoid of any

[1] *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).
[2] *Id*.

composite pile experience. He admitted that he has never written a specification for composite piles or rendered an opinion on composite piles. Stated differently, Mr. Dietz admittedly has no experience with the only construction component at issue in this litigation.

Further, a key issue for North American is whether or not the conditions encountered were unforeseen or caused by deficient work, as alleged. Although all facts in this matter clearly show that the condition was unforeseen, Mr. Dietz also did not do any analysis to determine whether the failed piles were due to different underground conditions that were not experienced at previous successful pours. And according to Mr. Dietz, he is not qualified to render such an opinion; a geotechnical engineer would be needed. As stated by Mr. Dietz:

> Q. Did you do any analysis to determine whether the piles that failed were due to different underground conditions that was not experienced at a location of previous successful pours?
> A. No, that would involve getting a whole separate geotechnical engineering report at the site, so no.
> Q. So you didn't look into that issue?
> A. No, not getting a whole new other -- it would involve getting another geotechnical engineer report at a construction sit so no.
> Q. Okay. Well, did anybody tell you you can't get another geotechnical --
> A. No.[3]

However, Mr. Dietz chose not to talk to the geotechnical engineer and the third-party inspectors who actually witnessed all work and the conditions encountered in the field. Thus, he rendered a report detailing possible causes, but not consider or investigate whether the cause could be unforeseen as opposed to caused by deficient or defective work as alleged by North American. As such, the Rimkus Report and any testimony from Mr. Dietz should be excluded for purposes of determining causation.

[3] Exhibit "7" to Palmisano's Motion in Limine (R. Doc. No. 132), Deposition of Rimkus at 73:21-25, 74:1-10.

## III. DIETZ TESTIFIED A GEOTECHNICAL ENGINEER WAS NEEDED, BUT DID NOT BOTHER TO SPEAK WITH SOUTHERN EARTH SCIENCES AND FAILED TO CONSIDER INFORMATION FROM SOUTHERN EARTH SCIENCES THAT DID NOT SUPPORT HIS CONCLUSION.

The Rimkus Report clearly shows that the basis of the Report are a few interviews, an inspection where no pile work was being performed, photographs Mr. Dietz took, and 3 documents. However, Mr. Dietz did not interview anyone from Southern Earth Sciences, the geotechnical engineers and third-party inspectors, or consider the April 15, 2019, Report from Southern Earth Sciences that stated "speed and volume of the water" was "unprecedented."[4] Instead, Mr. Dietz' considerations were based on the incorrect premise that Palmisano's work was somehow deficient, which is exactly the position North American took days after it received the Claim, without regard for the facts. However, "expert may not disregard without cause facts which are unfavorable to his opinion."[5]

Moreover, the law requires that an expert investigating causation "should carefully consider alternative causes," [6] i.e. unforeseen conditions. However, Mr. Dietz clearly failed to do so, despite being told by Joe Caldarera, KDHSA Board Member, about unusual hydraulic pressure at the site.[7] Mr. Dietz had an obligation to investigate alternative causes for the alleged water in the cans; but he failed to do so and was admittedly not qualified. And he never even bothered to reach out to the geotechnical engineer for the Project for additional information or to even discuss the possibility of an unforeseen condition. As Mr. Dietz' Report does not account for "obvious"

---

[4] Exhibit "7", to Palmisano's Motion in Limine (R. Doc. No. 132), Deposition of Rimkus at 72:5-17.
[5] *Cooper v. Meritor, Inc.*, No. 4:16-CV-52-DMB-JMV, 2019 WL 545159, at *4 (N.D. Miss. Feb. 11, 2019).
[6] *E.I. du Pont de Nemours and Co. v. Robinson*, 923 S.W.2d 549, 559 (Tex. 1995); *see Omni USA, Inc. v. Parker-Hannifin Corp.*, 964 F. Supp. 2d 805, 837 (S.D. Tex. 2013) (excluding expert's opinion as unreliable because his opinion regarding causation failed to rule out other possible causes and was thus unhelpful to a jury).
[7] Exhibit "7", to Palmisano's Motion in Limine (R. Doc. No. 132), Deposition of Rimkus at 52:20-25, 53:1-11.

alternatives. The Rimkus Report will not assist the trier of fact in determining causation in this matter and therefore, should be excluded.[8]

## IV. CONCLUSION

The Rimkus Report authored by Mr. Dietz was limited to 37 piles. Mr. Dietz' did not investigate the remaining 581 and they are simply not included in the Report. And North American cannot stretch the Report to cover the remaining piles. Thus, any testimony regarding the 581 piles by Mr. Dietz should be excluded as beyond the scope of Report. Further, Mr. Dietz has no experience with composite piles and is not a geotechnical engineer. As such, he does not have the specialized training or experience to opine on causation based on the facts in this matter. And because of his lack of experience, the Rimkus Report does not consider other causes, like the unforeseen conditions encountered at the site. Thus, the Report is not based upon sufficient facts or data as required by Fed. R. of Evid. 702(b) and should be excluded by this Honorable Court. Accordingly, Palmisano respectfully moves this Honorable Court to exclude any testimony, Reports, or opinions of Rimkus and Warren Dietz in this matter.

Respectfully submitted:

**RIESS LeMIEUX, LLC**

*/s/ Christopher K. LeMieux*

Christopher K. LeMieux (#27838)
Johanna Elizabeth Lambert (#33227)
1100 Poydras Street, Ste. 1100
New Orleans, Louisiana 70163
Telephone: (504) 581-3300
Facsimile: (504) 581-3310
E-mail: CLeMieux@RLLaw.com
Email: JLambert@RLLaw.com
***Attorneys for Palmisano, LLC***

[8] See *Hirchak v. W.W. Grainger, Inc.*, No. 19-2642 (8th Cir. 2020) at pp. 4.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the above and foregoing has been served upon all counsel of record by depositing same in the U.S. mail, properly addressed and postage prepaid, and/or by electronic mail, this 25th day of January 2021.

/s/ Christopher K. LeMieux
CHRISTOPHER K. LeMIEUX